FILED
DISTRICT OF NEBRASKA
AT_____
APR 15 1977
William L. Olson, Clerk
By_____Deputy

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                              )<br>              Plaintiff,     )<br>                              )<br>     vs.                      )       MEMORANDUM OF DECISION<br>                              )<br>                              )<br>                              )<br>JOHN SALANITRO, et al,        )<br>                              )<br>              Defendants.     )       CR75-O-47 | |

    For a year before March, 1975, a federal grand jury investigated gambling activities in Omaha and elsewhere in Nebraska. It returned an indictment against eighteen, charging operation of an illegal gambling business, conspiracy, and use of wire communication facilities to conduct an unlawful gambling business. Although no governmental official or employee was indicted, the indictment included declarations that some of the defendants:

> " . . . did conspire . . . with Anthony Troia, an Assistant Prosecutor for the City of Omaha, Nebraska, and with other officials and employees, elected, appointed, and otherwise, of the State of Nebraska and its political subdivisions, to obstruct the enforcement of the criminal laws . . ."

and that a purpose of the conspiracy was to:

> " . . . corruptly endeavor to impede . . . the laws . . . by influencing the officials and employees of said State and City of Omaha, including but not limited to said Anthony Troia . . ."

    The City of Omaha, the Counsel on Discipline of the Nebraska State Bar Association, the Nebraska Commission on Judicial Qualifications, and a member of the Judiciary Committee of the Nebraska Legislature have moved separately for disclosure of testimony given before the grand jury. A hearing on the applications was held by this court en banc on September 29, 1976. Between that date and this, we have read the transcript of the testimony of the one-hundred-plus witnesses who appeared before the grand jury and have awaited disposition of appeals of some of the defendants' convictions. In view of the approach we have decided to take, there is no need to wait longer.

                  I.   LEGAL PREREQUISITES

    A.  *Preliminary to or in Connection with a Judicial Proceeding*

    Congress has legislated on the subject of grand jury testimony in Rule 6(e) of the Federal Rules of Criminal Procedure, as follows:

> "Disclosure of matters occurring before the grand jury . . . may be made to the attorneys for the government . . . Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding . . ."

The Rule affirms a policy of maintaining a veil of secrecy around grand jury proceedings and means that the veil is not to be pulled aside, except "to the attorneys for the government" or "preliminarily to or in connection with a judicial proceeding." Because an "attorney for the government" means only an attorney employed by the United States, 1/ and none of the applicants is within that definition, the first sentence of the rule is inapplicable to our present inquiry. The issue then becomes whether the applicants' requests are to acquire grand jury testimony either "preliminarily to or in connection with a judicial proceeding." We hold that they are.

The Municipal Code of the City of Omaha, authorized by Article VI of the City Charter, provides for the reprimand, suspension, demotion and dismissal of persons employed by the city. These actions may be taken by the department head and an appeal to the city's Personnel Board is authorized. Nothing has been found by us which permits any judicial proceeding as an extension of or an appeal from the decision of the Personnel Board. Separately, the city attorney and city prosecutor may prosecute for criminal violations of city ordinances and state statutes, including those prohibiting gambling. The request of the City of Omaha is that we release that portion of the transcript of the grand jury testimony "which bears upon the alleged misconduct of Omaha city officials, past and present."

The Counsel on Discipline of the Nebraska State Bar Association draws his authority from Article III of the Revised Rules of the Supreme Court of the State of Nebraska, 1974, as amended July 2, 1975. Those Rules require him to investigate all allegations of misconduct of attorneys who are members of the Association. A series of steps leads, if the evidence warrants, from that investigation to a hearing before the Committee on Inquiry and then to a hearing before the Supreme Court of Nebraska, following which that court decides whether the attorney is guilty of misconduct and the discipline to be imposed. The Counsel on Discipline asks us to order release of all portions of the transcript containing the testimony of Anthony Troia, the testimony of any witnesses about any member of the Nebraska State Bar Association, including Anthony Troia, and the names of all persons who testified before the grand jury.

The Nebraska Commission on Judicial Qualifications has been organized under § 24-715 et seq., Nebraska R.R.S. 1943, as amended. Its duties are to investigate all complaints with reference to the "acts, activities, or qualifications of any judge or justice of the courts of the State of Nebraska," hold hearings, and make recommendations to the Supreme Court of Nebraska, which has the authority to order the removal or

retirement of any such judge or justice for specified reasons. The Commission on Judicial Qualifications asks us for disclosure of such part of the grand jury evidence as pertains "to the conduct of any judge of a court having jurisdiction over violations of the law of the State of Nebraska or the ordinances of the City of Omaha, Nebraska."

State Senator Ernest W. Chambers, a member of the Judiciary Committee of the Nebraska Legislature, seeks a disclosure of "any and all portions of the Grand Jury testimony and evidence which bear on the legitimate legislative and public interests" enumerated in his motion. He lists seven such interests, 2/ but only one can be said to be "preliminar[y] to or in connection with a judicial proceeding." That one, the removal from office of public officials, is created by Article III, Section 17, of the Constitution of the State of Nebraska, which reserves to the state legislature the sole power of impeachment and establishes a court of impeachment, consisting of the Supreme Court of Nebraska or all the judges of the District Court of the state, depending upon the office held by the person impeached. Article IV, Section 5, declares that "All civil officers of this state shall be liable to impeachment for any misdemeanor in office."

Each of these procedures for prosecuting violators of criminal laws, disciplining lawyers, removing judges, and impeaching state civil officers is designed to culminate in a judicial proceeding. Judge Learned Hand's definition of "judicial proceeding," stated in *Doe v Rosenberry*, 255 F.2d 118, 120 (C.A. 2nd Cir. 1958), is apropos:

> " . . . We cannot agree that the Rule should be limited to criminal proceedings; on the contrary we hold that, prima facie, the term 'judicial proceeding' includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime. An interpretation that should not go at least so far, would not only be in the teeth of the language employed, but would defeat any rational purpose that can be imputed to the Rule."

All the requests of the applicants, therefore, are preliminary to or in connection with a judicial proceeding, 3/ except to the extent that the City of Omaha asks for information beyond that relating to matters subject to prosecution. The procedure for reprimanding, suspending, demoting and dismissing employees is not preliminary to or in connection with a judicial proceeding. 4/

    *B. Compelling and Particularized Need*

Permeating Rule 6(e) is an additional requirement, implicitly but firmly imposed by history. Its articulation by the Supreme Court of the United States in *United States v Procter & Gamble*, 356 U.S. 677, 681 (1958), in deciding whether disclosure of matters adduced before a grand jury should be ordered, was as follows:

-3-

> " . . . [W]e start with a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts. [Citations omitted.] The reasons are varied . . ."

A footnote at that point says:

> "In *United States v Rose*, 215 F.2d 617, 628-629, those reasons were summarized as follows: (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

The Supreme Court went on:

> " . . . This 'indispensable secrecy of grand jury proceedings,' [citations omitted] must not be broken except where there is a compelling necessity."

In that case the court held that the district court had erred in ordering production of testimony given before the grand jury. It was a civil antitrust case in which it was shown that the government was using the grand jury testimony to present its case and the defendants wanted the same privilege. Needed, said the Supreme Court, was a "much more particularized, more discrete showing of need" for the "wholesale" production of the grand jury transcript. The necessity of a showing of a "particularized need" was reaffirmed in *Pittsburgh Plate Glass Co. v United States*, 360 U.S. 395 (1959).

Secrecy was dyed into the fabric of the grand jury proceedings long before our nation's birth 5/ and became permanent by the Constitution's explicit guarantee that the grand jury would be retained as an institution. While states may do as they choose with secrecy as a concept, we are impelled by our past to treat secrecy as being indelibly within the nature of the federal grand jury. It is entitled to a dignity of its own. Accordingly, lack of a reason for secrecy in a particular case is not enough to trigger disclosure of federal grand jury testimony; only a demonstrable need for opening the proceedings will do. 6/ Moreover, an opening should be no wider than the need demands.

Therefore, we must analyze whether each of the applicants has shown affirmatively a compelling and particularized need for the portion of the transcript sought.

Whenever charges of corruption of public officials and employees surface, pointed attention to them is deserved. The integrity of the courts is shaken by every misconduct of judges or lawyers, who are the courts' officers. Neither the executive nor the legislative arm of government is worthy of confidence, if its officers are corrupt. A federal grand jury here has declared the existence of a criminal conspiracy by unnamed "officials and employees . . . of the State . . . and its political subdivisions." Reestablishing faith in state and city governments by proving or disproving the

faithfulness of their officials is a goal with enough urgency to carry a major part of a compelling and particularized need. 7/ Unless the information held by the grand jury can be acquired readily another way, the primacy of the goal should be enough to allow revelation of the grand jury testimony.

Little, if any, can be obtained by other means, as things stand now. The only names that have come to any of the applicants, evidently, are those of one lawyer and one municipal judge. The lawyer, Anthony Troia, was 8/ named in the indictment, but the indictment went on to assert that the defendants conspired with Troia "and with other officials and employees" of the state and city. The wording can hardly be interpreted to mean Troia and one municipal judge. No other clue to the identity of the other "officials and employees" appears in the indictment. Under those circumstances, none of the applicants is in a position to know whether or not it or he has investigated the people or events being described by the grand jury or has talked to the persons who know the facts about those events. Because of the specific facts outlined above, we conclude that a compelling and particularized need has been shown for an in camera examination of the grand jury transcript and, in light of that examination, which we have made, for some additional disclosure, the extent of which will be as restricted as is consistent with the foregoing analysis.

By ordering relief we do not intimate that there is in the transcript any evidence of a conspiracy touching any officials or employees of any governmental unit. But there is evidence of other subjects within the purview of three of the applicants. We express no view as to whether any person about whom testimony was given was or was not engaged in any impropriety or whether any of the testimony amounts to a basis for any action by any of the applicants. We say only that some disclosures need to be made to enable three of the applicants to make decisions.

II. RELIEF

The entire transcript of the testimony of those appearing before the grand jury has been read by us. We say categorically that there is no evidence in the transcript of any misdemeanor by any civil officer, past or present, of the State of Nebraska. "Civil officer" means a holder of a constitutional or statewide office. 10/ Because the only persons over which the legislature of the State of Nebraska has impeachment power are "civil officers," and because impeachment is the only basis which we are permitted to recognize for disclosure to Senator Chambers on behalf of the Legislature, there is no necessity shown for disclosure of any of the testimony to him.

To the City of Omaha we shall reveal the names and addresses of those persons who gave testimony which could be interpreted as indicating criminal activity by one or more of the city's officers or employees and a general description of the subject matter of the testimony.

To the Counsel on Discipline of the Nebraska State Bar Association we shall disclose the names and addresses of

-5-

those witnesses who gave testimony which could be interpreted as indicating criminal or professionally unethical activity by one or more lawyers and a general description of the subject matter of the testimony.

To the Nebraska Commission on Judicial Qualifications we shall state the names and addresses of the witnesses who gave testimony which could be interpreted as indicating criminal or professionally unethical activity by one or more judges and a general description of the subject matter of the testimony.

Interviews of these witnesses by the applicants 11/ may produce all the information that was given to the grand jury. If that happens, it is doubtful that there will be any need for turning over any of the transcript of the testimony given to the grand jury. 12/ Upon motion of an applicant after completion of the applicant's investigation, however, we are prepared to compare the statement to the applicant by an interviewee with the testimony to the grand jury by the same interviewee to determine whether any need remains for turning over any part of the transcript of the grand jury testimony. While we know that this disposition places greater work upon the applicants and upon the court than would an opening now of the transcript itself to the applicants, we think our order is consistent with the strict requirements of the law, as addressed in this memorandum. 13/

Dated April _15_, 1977.

BY THE COURT

_____
Chief United States District Judge

_____
United States District Judge

_____
United States District Judge

-6-

Footnote 1/ Rule 54(c) defines it as "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney and when applicable to cases arising under the laws of Guam . . . the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein."

Footnote 2/ These matters are listed by Senator Chambers in his motion:

"(a) revision of Nebraska criminal statutes;
(b) enforcement of Nebraska criminal statutes;
(c) revision of Nebraska criminal procedure;
(d) performance of statutory duties by public officials;
(e) qualifications for various public offices;
(f) removal from office of public officials;
(g) federal-state relationships relative to the above subjects."

Footnote 3/ Accord: *In re Special February 1971 Grand Jury, Jachimowski v Conlisk*, 490 F.2d 894 (C.A. 7th Cir. 1973), ordering release for a police disciplinary investigation; *In re Grand Jury Transcripts*, 309 F. Supp. 1050 (U.S.D.C. S.D. Ohio 1970), directing disclosure for a police disciplinary investigation; *In re Bullock*, 103 F. Supp. 639 (U.S.D.C. D.C. 1952), ordering disclosure to a police disciplinary board of the testimony of the police officer under investigation only; *In re Report and Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives*, 370 F. Supp. 1219 (U.S.D.C. D.C. 1974), authorizing release to the Judiciary Committee of the United States House of Representatives; and *In the Matter of Petition for Disclosure of Evidence Before the October, 1959 Grand Jury of This Court*, 184 F. Supp. 38 (U.S.D.C. E.D. Va. 1960), permitting release to the prosecuting attorney of a state.

Footnote 4/ *In the Matter of Petition for Disclosure of Evidence Before the October, 1959 Grand Jury of This Court* 184 F. Supp. 38 (U.S.D.C. E.D. Va. 1960), refusing at p. 40 disclosure to extent that city sought it for evidence of "misbehavior" not indictable or prosecutable as crime.

Footnote 5/ *Pittsburgh Plate Glass Co. v United States*, 360 U.S. 395, 399 (1959). See 8 Wigmore, *Evidence* § 2360 (McNaughton rev. 1961), showing a positive affirmation of secrecy dating back at least to the late 17th century in England.

Footnote 6/ As put by Chief Judge Clary in *City of Philadelphia v Westinghouse Electric Corp.*, 210 F. Supp. 486, 489 (U.S.D.C. E.D. Pa. 1962):

" . . . [D]isclosure cannot be compelled by the negative fact that there may be no immediate need for secrecy, but only by the positive need for disclosure."

Footnote 7/ Similar grounds have been relied upon by other courts. See, for example, *In re Special February 1971 Grand Jury, Jachimowski v Conlisk*, 490 F.2d 894, 898 (C.A. 7th Cir. 1973); *In re Report and Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives*, 370 F. Supp. 1219 (U.S.D.C. D.C. 1974); *In re Bullock*, 103 F. Supp. 639 (U.S.D.C. D.C. 1952).

Footnote 8/  After the indictment was returned, Judge Schatz ordered Troia's name stricken.

Footnote 9/  We adopt the broadest possible meaning of "misdemeanor," which is the basis for impeachment. Senator Chambers' brief suggests the word means "violation of a positive statute amounting to a crime, or willful neglect of duty with corrupt intent or gross negligence inferring willful or corrupt intent."  Cited is *State v Hastings*, 37 Neb. 96, 55 N.W. 774 (1893), which supports that definition.  We accept that definition for purposes of this case.

Footnote 10/  *Conroy v Hallowell*, 94 Neb. 794, 144 N.W. 895 (1913); *Laverty v Cochran*, 132 Neb. 118, 271 N.W. 354 (1936); *Fitzgerald v Kuppinger*, 163 Neb. 286, 79 N.W.2d 547 (1956); *State ex rel. Beck v Obbink*, 172 Neb. 242, 109 N.W.2d 288 (1961).

Footnote 11/  Some of the witnesses have already been interviewed by at least one of the applicants, but our describing additional subject matters may prompt a wider discussion than has been held so far.

Footnote 12/  See *In re Halovachka*, 317 F.2d 834 (C.A. 7th Cir. 1963).

Footnote 13/  For example of somewhat similar techniques see *Beatrice Foods Co. v United States*, 312 F.2d 29 (C.A. 8th Cir. 1963), and cases cited at 38; *City of Philadelphia v Westinghouse Corporation*, 210 F. Supp. 486 (U.S.D.C. E.D. Pa. 1962).